Case 3:06-cv-05172-FDB   Document 15   Filed 05/22/06   Page 1 of 19
Case 3:06-cv-05172-FDB-JKA   Document 1-2   Filed 03/29/2006   Page 1 of 19
Case 3:05-mc-05029-RSL   Document 23   Filed 01/18/2006   Page 1 of 19

FILED ___ LODGED
___ RECEIVED
JAN 18 2006
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

MS ~~C06~~ 05-5029

RICHARD ROY SCOTT,   Plaintiff

v.

WAlder Weinberg, Jerilee Jones, Becky Denny, Alan McLaughlin, Dr Richards, Tim Lang, Donna Hamilton, Jeff Erwin

6 to be named persons

Defendants

Complaint UNDER 42 U.S.C. § 1983 and 1997 et seq and OBSTRUCTION OF JUSTICE

PENDENT STATE CLAIM FOR NEGLIGENT SUPERVISION AND GROSS NEGLIGENCE UNDER THE COMMON LAW AND PENDENT STATE TORT CLAIMS

## I. PARTIES

Plaintiff:

Richard Roy Scott

Box 886000

Steilacoom, Washington 98388

- 1 -

Richard Roy Scott Pro se
PO Box 88600
Steilacoom WA. 98388
(253) 584-9604

05-MC-05029-CMP

Case 3:06-cv-05172-FDB   Document 15   Filed 05/22/06   Page 2 of 19
Case 3:06-cv-05172-FDB-JKA   Document 1-2   Filed 03/29/2006   Page 2 of 19
Case 3:05-mc-05029-RSL   Document 23   Filed 01/18/2006   Page 2 of 19

1

2  Defendants:  WAlder Weinberg, (individual capacity and official capacity)

3  Box 88450

4  Steilacoom, Washington 98388

5

6  Jerilee Jones (individual capacity and official capacity)

7  Box 88450

8  Steilacoom, Washington 98388

9

10  Alan McLaughlin (individual capacity)

11  Box 88450

12  Steilacoom, Washington 98388

13

14  Becky Denny (individual capacity and official capacity)

15  Box 88450

16  Steilacoom, Washington 98388

17

18  Dr. Szeibert (individual capacity and official capacity)

19  Box 88450

20  Steilacoom, Washington 98388

21

22  Mr. Richards (individual capacity and official capacity)

23  Box 88450

24  Steilacoom, Washington 98388

25

26  Tim Lang (individual capacity and official capacity)

COMPLAINT   - 2 -   Richard Roy Scott Pro se
PO Box 88600
Steilacoom WA. 98388
(253) 584-9604

Case 3:06-cv-05172-FDB   Document 15   Filed 05/22/06   Page 3 of 19
Case 3:06-cv-05172-FDB-JKA   Document 1-2   Filed 03/29/2006   Page 3 of 19
Case 3:05-mc-05029-RSL   Document 23   Filed 01/18/2006   Page 3 of 19

1  Box 40116
2  Olympia, Washington 98504
3
4
5
6  Donna Hamilton (individual capacity and official capacity)
7  Box 40116
8  Olympia, Washington 98504
9
10  Jeff Erwin (individual capacity and official capacity)
11  Box 40116
12  Olympia, Washington 98504
13

## II. DEFINITIONS AND CLARIFICATIONS

15  "SCC" means the Special Commitment Center
16  "PAM" mean Program Area Manager
17  "R&D" stands for receiving and delivery of packages
18  "RTF" stands for Resident transfer of funds
19  "RRC" stands for Resident Rehabilitation Councilor
20  "FT" stands for Forensic Therapist
21  "WSBA" stands for Wash State Bar Association
22  "DSHS" stands the Department of Social and Health Services
23  "AAG" stands for Assistant Attorney General
24  "AG" stands for Attorney General
25  "Pro Se" means self representing on legal matters
26  "RAs" residents advocates

COMPLAINT                                      - 3 -                      Richard Roy Scott Pro se
                                                                          PO Box 88600
                                                                          Steilacoom WA. 98388
                                                                          (253) 584-9604

1. The term resident and detainee are interchangeable herein
2. This compliant is limited to the time period of June 2005 forward only

### III. FACTS

1. Plaintiff is a civil detainee presently housed at the Special Commitment Center (SCC) located on McNeil Island in the State of Washington for an forensic evaluation
2. SCC is not a prison
3. SCC is a division of the DSHS
4. Plaintiff has not been committed
5. Under the Civil commitment statutes civil detainees retain all the rights of citizen
6. Under civil commitment statute SCC Superintendent Dr. Richard is responsible for the care, treatment and safety of plaintiff while a civil detainee
7. Dr. Richards office in on the mainland
8. Dr. Richards promulgates all SCC policies
9. No SCC policy can be changed or go into effect without Dr. Richards signature (approval)
10. Alan McLaughlin is an associate SCC superintendent who has been designated by Dr. Richards to see to the care, treatment, and safety of plaintiff Scott and enforcement of SCC policies
11. Alan McLaughlin can not promulgate SCC policy
12. Alan McLaughlin's office is within SCC
13. Weinberg is a PAM
14. Weinberg can approve RFTs, has input into room assignments, and can sanction SCC residents for rule violations, and supervises unit staff
15. Weinberg can censor what detainee can buy or receive, including what they can read and view

Case 3:06-cv-05172-FDB   Document 15   Filed 05/22/06   Page 5 of 19
Case 3:06-cv-05172-FDB-JKA   Document 1-2   Filed 03/29/2006   Page 5 of 19
Case 3:05-mc-05029-RSL   Document 23   Filed 01/18/2006   Page 5 of 19

16. PAMs oversee non programmers RFTs and review incoming mail and packages detainees receive for appropriateness
17. FT oversee programmers RFTs and review incoming mail and packages detainees receive for appropriateness
18. Jerilee Jones supervises the SCC Mail Room, the SCC R&D, and the SCC store and approves or denies some detainee RFTs
19. Jerilee Jones censors incoming mail and packages except what items have been previously approved by FTs or PAMs
20. Becky Denny is the SCC records manager and the SCC legal Coordinator
21. Denny can not promulgate SCC policy but is often asked to review SCC policy from legal standing pint of view
22. Denny is not a lawyer or member of the WSBA
23. Denny seeks legal guidance from the AAGs assigned to SCC
24. Tim Lang is an AAG assigned to SCC
25. Donna Hamilton is an AAG assigned to SCC
26. Jeffery Erwin was an AAG assigned to SCC until November 2005
27. Jeffery Erwin is presently with the roads and bridges division of the AG office
28. The SCC AAGs give legal advice to all SCC staff who seek it, and review SCC policies and practices for legality
29. At all times referred to in this complaint the AAGs for SCC were Lang and Hamilton and Erwin up to November 2005
30. All parties named herein were aware of the facts or events or actions set forth in this compliant
31. An SCC committee of staff members assigns detainees a privilege level from one to five, one being the lowest level of privileges and five the highest
32. Prior to June 2005 plaintiff had a personal computer

COMPLAINT — 5 —

Richard Roy Scott Pro se
PO Box 88600
Steilacoom WA, 98388
(253) 584-9604

Case 3:06-cv-05172-FDB    Document 15    Filed 05/22/06    Page 6 of 19
Case 3:06-cv-05172-FDB-JKA    Document 1-2    Filed 03/29/2006    Page 6 of 19
Case 3:05-mc-05029-RSL    Document 23    Filed 01/18/2006    Page 6 of 19

33. Prior to June 2005 plaintiff was a non programmer

34. Prior to June 2005 plaintiff was housed in a medium custody unit called Elm

35. Prior to June 2005 plaintiff was a privilege level two detainee

36. Prior to June 2005 plaintiff was an escorted to from his unit

37. Prior to June 2005 could come and go from his unit unrestricted using his name tag to open the unit door

38. Prior to June 2005 plaintiff could leave his cell without asking permission

39. Prior to June 2005 plaintiff eat in the detainee chow hall with his fellow detainee

40. Prior to June 2005 plaintiff could mail his mail at any time from 7 am to midnight

41. Prior to June 2005 plaintiff did not have a toilet in his SCC cell

42. Prior to June 2005 had never been locked in his SCC cell

43. Prior to June 2005 plaintiff has access to 100 sheets of typing paper a week and twenty five small envelopes, plus unlimited access to large envelopes and extra small envelopes.

44. Prior to June 2005 plaintiff has access to uncensored four phones which detainees could call him on from other SCC units or outside SCC or administrators

45. Prior to June 2005 plaintiff had full access to any detainee during meals or yard times or gyp times.

46. Prior to June 2005 plaintiff was assisting 124 residents with active legal cases in state and federal court. Both 1983s and PRPs.

47. Prior to June 2005 plaintiff was producing a campus newsletter called the Liberty Puzzle

48. Prior to June 2005 plaintiff had reviewed on one day a week various SCC administrative staff emails and attachments

49. Prior to June 2005 plaintiff had reviewed all Denny's emails for a two year period

50. Prior to June 2005 plaintiff had reviewed all resident or staff abuse complaints from the first day SCC was created

COMPLAINT                - 6 -                Richard Roy Scott Pro se
                                              PO Box 88600
                                              Steilacoom WA. 98388
                                              (253) 584-9604

Case 3:06-cv-05172-FDB   Document 15   Filed 05/22/06   Page 7 of 19
Case 3:06-cv-05172-FDB-JKA   Document 1-2   Filed 03/29/2006   Page 7 of 19
Case 3:05-mc-05029-RSL   Document 23   Filed 01/18/2006   Page 7 of 19

51. Prior to June 2005 plaintiff had reviewed the emails and attachments of Dr. Richards the SCC Superintendent

52. Prior to June 2005 plaintiff had requested to review WAlder Weinberg's emails

53. Prior to June 2005 plaintiff had requested to review Alan McLaughlin's emails

54. Prior to June 2005 plaintiff was allowed to review and copy yearly forensic evaluations of residents, with their names redacted

55. Prior to June 2005 plaintiff was allowed make copies of any of the items he reviewed as set forth in this complaint

56. Prior to June 2005 he was allowed to reprint in his Liberty Puzzle any item disclosed to him without restrictions or censorship

57. Prior to June 2005 plaintiff was allowed to distribute his campus newsletter the Liberty Puzzle through the mail room, as well as update letters to those he was assisting

58. Prior to about June 2005 all his "pro se" status mail went out no charge and all that was required was that he put the term "Pro se" after his name.

59. Prior to June 2005 other detainee were allowed to assist plaintiff by giving him paper, envelopes and stamps, stamped envelopes, or ink for his printer, and make copies for him.

60. Prior to June 2005 the Liberty Puzzle was a joint effort of several SCC residents to produce a campus newsletter

61. Prior to June 205 plaintiff formed a non profit Washington state corporation called Wives and Mothers of Prisoners of the State (WMPS Inc)

62. Prior to June 2005 resident's contributed donations via RFTs to WMPS Inc through it's bank account or officers for use in producing the Liberty Puzzle

63. Prior to June 2005 detainees were not restricte3d from sending funds to WMPS Inc

64. Prior to June 2005 there was another widely circulated publication called the "Lifers Union" by another SCC detainee

COMPLAINT    - 7 -    Richard Roy Scott Pro se
PO Box 88600
Steilacoom WA. 98388
(253) 584-9604

Case 3:06-cv-05172-FDB   Document 15   Filed 05/22/06   Page 8 of 19
Case 3:06-cv-05172-FDB-JKA   Document 1-2   Filed 03/29/2006   Page 8 of 19
Case 3:05-mc-05029-RSL   Document 23   Filed 01/18/2006   Page 8 of 19

65. Prior to June 2005 the owner of the Lifers Union was dependent of the income from the Lifers Union subscriptions and sales of advertised items for his income

66. Prior to June 2005 the Lifers Union was read by most administrative staff and SCC AGG

67. Prior to June the Lifers Union was subscripted to by many resident

68. Prior to June 2005 detainee were allowed to send funds to the Lifers Union

69. Prior to June 2005 the popularity of the Liberty Puzzle caused very few detainees to renew their subscriptions to the Lifers Union resulting in a lost of income for the owner of the Lifers Union and it's business partners or associates

70. The Liberty Puzzle listed several SCC detainee editors

71. Weinberg became aware of a situation of conflict with the owner of the Lifers Union and his associates, and the publishers and editors of the L.B. when the Lifers Union "gang" began a campaign to shut down the Liberty Puzzle (L.B.), in April/May 2005

72. Prior to June 2005 the Lifers Union gang assaulted one of the L.B. editors, a Paul Williams and a contributor of articles/info, a detainee Sam Donaghe of the L.B, as well as the plaintiff, with verbal assault and physical harm

73. Prior to June 2005 WAlder Weinberg interviewed Sam and Paul and confronted the Lifers Union gang. Then with hours he witnesses that gang verbal assault Paul in the yard.

74. Weinberg reacted by restricting the owner of *Lifers* from the chow hall, so that Paul and Sam could go to the chow hall.

75. Prior to June 2005 Sam and Paul hadn't eaten in the SCC chow hall for more then a year for fear of the owner of the *Lifers* and is gang.

76. Prior to June 2005 Sam had been jumped by the owner of the *Lifers* gang and beat up years prior

77. Prior to June 2005 Weinberg was aware of all the fact set forth herein with regards to the owner of the *Lifers* and his "gang"

COMPLAINT                                  - 8 -                                  Richard Roy Scott Pro se
                                                                                  PO Box 88600
                                                                                  Steilacoom WA. 98388
                                                                                  (253) 584-9604

Case 3:06-cv-05172-FDB    Document 15    Filed 05/22/06    Page 9 of 19
Case 3:06-cv-05172-FDB-JKA    Document 1-2    Filed 03/29/2006    Page 9 of 19
Case 3:05-mc-05029-RSL    Document 23    Filed 01/18/2006    Page 9 of 19

78. Prior to June 2005 the SCC administrator name herein were aware of the *Lifers gang* activities prior to June 2005

79. Dr. Szeibert is the SCC Psychiatric Doctor

80. Prior to June 2005 Dr. Szeibert was aware of the *Lifers' gang* activities prior to June 2005

81. Prior to June 2005 Weinberg assured Paul and Sam that it was safe to go to the chow hall but the *Lifers* gang had not been restricted from the chow hall. Only the owner of *Lifers*.

82. No restriction on yard access had been made by WAlder Weinberg of the *Lifers gang*

83. Within a month the restriction reference in #81 had been lifted and Sam was again given meals in the unit, but Paul continued to eat in the chow hall.

84. Prior to June 2005 WAlder was aware that the *Lifers gang* had posted two members outside the Elm unit entrance/exit and were harassing L.B. staff, and telling other detainees that the L.B. had inappropriate naked baby pictures and that all their computers were going to be taken as a result

85. Prior to June 2005 was aware that the *Lifers gang* depended on the income from *Lifers* for food stuff, hygiene and cloths ,as well as computer games accessories

86. Prior to June 2005 the administrator named and Dr, Szeibert were aware that the *Lifers gang* depended on the income from *Lifers* for food stuff, hygiene and cloths ,as well as computer games accessories

87. Prior to June 2005 SCC resident Dan Audett was a editor of the L.B.

88. Prior to June 2005 SCC resident David Durbin was a editor of the L.B.

89. Under pressure from the lifers gang Dan Audett with drew as an editor

90. Prior to June 2005 Weinberg was aware Audett had with drawn as an editor of L.B. due to the naked baby pictures rumor spread by the *Lifers gang*.

COMPLAINT    - 9 -    Richard Roy Scott Pro se
PO Box 88600
Steilacoom WA. 98388
(253) 584-9604

Case 3:06-cv-05172-FDB   Document 15   Filed 05/22/06   Page 10 of 19
Case 3:06-cv-05172-FDB-JKA   Document 1-2   Filed 03/29/2006   Page 10 of 19
Case 3:05-mc-05029-RSL   Document 23   Filed 01/18/2006   Page 10 of 19

91. Prior to June 2005 Weinberg shared the information set forth in this compliant above with the administration of SCC, the resident Advocate, but not Dr. Szeibert

92. Prior to June 2005 Weinberg was aware of a close relationship between the *Lifers gang* and the resident advocate Will Bailey

93. Prior to June 2005 Weinberg spoke with Dr. Richards with regards to the developing situation between the L.B. staff and the *Lifers gang*, as set forth herein

94. Prior to June 2005 Weinberg spoke with Alan McLaughlin with regards to the developing situation between the L.B. staff and the *Lifers gang*, as set forth herein

95. Prior to June 2005 Weinberg spoke with Will Bailey with regards to the developing situation between the L.B. staff and the *Lifers gang*, as set forth herein

96. Prior to June 2005 Plaintiff spoke with Weinberg with regards to the developing situation as set forth in #95

97. Prior to June 2005 Plaintiff wrote numerous articles about the Lifers gang and Weinberg's corrective actions

98. Prior to early 2005 plaintiff and all detainee had assigned FTs.

99. Prior to June 2005 Weinberg became a PAM, a brand new post at SCC

100. Weinberg as a PAM in April/May/June, had control over 65% of the residents (all non programmers) and could censor what they read, viewed, purchase, where they were housed, assign privilege and custody levels. Decide/restrict whom they could associate with even. As well as whether they could get meals in the unit or be restricted from the chow hall.

101. Prior to June 2005 plaintiff wrote editorial challenging this "God Like Power" given to one man without any appeal process.

102. Under this new PAM position's authority Weinberg could and did write SCC residents up and sanction them without any hearings or appeals process available.

COMPLAINT   - 10 -   Richard Roy Scott Pro se
PO Box 88600
Steilacoom WA. 98388
(253) 584-9604

Case 3:06-cv-05172-FDB   Document 15   Filed 05/22/06   Page 11 of 19
Case 3:06-cv-05172-FDB-JKA   Document 1-2   Filed 03/29/2006   Page 11 of 19
Case 3:05-mc-05029-RSL   Document 23   Filed 01/18/2006   Page 11 of 19

103. Prior to June 2005 under this new PAM positions authority Weinberg could restrict someone, without a hearing, from an area or from talking to someone.

104. Prior to June 2005 Plaintiff wrote numerous articles and even requested to review Weinberg's emails and DSHS personnel files and correspondence, including directive.

105. Prior to June 2005 Plaintiff wrote to all levels of the SCC staff and to the administration of DSHS, as well as state senators, private lawyers, resident's lawyers, the ACLU, and the media about his "God" like power Weinberg had either granted himself, or been granted by the administration.

106. In June 2005 Weinberg order plaintiff's computer taken and searched, had plaintiff's room searched and had plaintiff placed in the hole, without a write-up, all on his own new found authority.

107. Weinberg's actions in June 2005 were designed to stop plaintiff attacks on his abuse of this "god like" self given powers.

108. Dr. Szeibert immediately meet with plaintiff in IMU (the hole)

109. In December 2005 Dr. Szeibert was deposed by Scott and admitted there was no foundation for the isolation of the plaintiff

110. Plaintiff was moved from the hole to an intensive management unit referred to herein as Alder North. The stated reason was for his protection.

111. A write up occurred in June 2005, signed by Weinberg alone, and no hearing occurred. Weinberg alleged that articles in the L.B. had upset resident putting Scott in danger. No resident was named.

112. In his deposition referenced herein Dr. Szeibert was unable to positively identify any resident, but acknowledge the situation with the *Lifers gang*.

113. After June 2005 and during plaintiff isolation in Alder North Plaintiff's request for a hearing fell on death ears.

COMPLAINT                                    - 11 -                           Richard Roy Scott Pro se
                                                                              PO Box 88600
                                                                              Steilacoom WA. 98388
                                                                              (253) 584-9604

Case 3:06-cv-05172-FDB   Document 15   Filed 05/22/06   Page 12 of 19
Case 3:06-cv-05172-FDB-JKA   Document 1-2   Filed 03/29/2006   Page 12 of 19
Case 3:05-mc-05029-RSL   Document 23   Filed 01/18/2006   Page 12 of 19

114. Placing plaintiff in Alder North, according to Sziebert's deposition place plaintiff in harms way because the unit is for violent mentally ill, one even has to wear legs straps when out of his cell.

115. Plaintiff remained without his computer for three months and on unit restriction for three months. Preventing him from assisting the 124 guys he was assisting with legal work, and preventing his writing critical articles about Weinberg.

116. The staff of Alder North took effective measures to cut plaintiff of from paper to write on, and envelopes to mail things in.

117. In the deposition taken of a former staff of Alder North, Carla Jones, December 20th the conditions in Alder North were confirmed as set forth herein.

118. After Plaintiff was moved to Alder North his pro se mail began coming back to him unmailed. At the direction of Denny and Jerilee Jones.

119. After June 2005 and during plaintiff isolation in Alder North, when others turned in items to copy that he had gotten through his reviews on Wednesdays, the documents were taken and circulated amongst staff and not returned.

120. After June 2005 and during plaintiff isolation in Alder North: When an Alder North resident attempted to order paper or envelopes the request not only went unfilled, but Carla Jones threw the request in plaintiffs room instructing him he could not help the residents fill out requests.

121. Plaintiff kept exact records of the events hat occurred after June 2005 and these he sent to Darrel Weeks the SCC abuse investigator, who turned them over to McLaughlin, who personally took no corrective actions.

122. McLaughlin never once found staff abuse in the five months Scott was in Alder North.

123. Scott was attacked while in Alder North.

Case 3:06-cv-05172-FDB   Document 15   Filed 05/22/06   Page 13 of 19
Case 3:06-cv-05172-FDB-JKA   Document 1-2   Filed 03/29/2006   Page 13 of 19
Case 3:05-mc-05029-RSL   Document 23   Filed 01/18/2006   Page 13 of 19

124. A female staff was attacked in Alder North during this five month period plaintiff was housed in Alder North

125. Ten times residents were attacked by residents or in fights with other Alder north residents, in Alder North, while plaintiff was housed in Alter North

126. At the SCC staff depositions December 20th 2005 they acknowledge the fights and attack, as set forth herein.

127. Plaintiff finally appealed to Dr. Richards by letter, and he came to Alter North with Weinberg.

128. After meeting with plaintiff Richards ordered his computer returned and his return to Elm. But Scott volunteered to stay in Alder North and try and bring their conditions of confinement up to constitutional minimums.

129. Dr. Richards and Scott were interviewed by MSNBC, while he was in Alter North.

130. After the MSNBC interview Weinberg again took plaintiff's computer on his own authority, no hearing, but this time he was forced to return it immediately un-searched.

131. After Weinberg took Plaintiffs computer for the second time the SCC investigator asked him for justification, and Weinberg was unable to produce anything.

132. The IT man refused to search Plaintiff's computer this time as referenced in #130.

133. Finally after five months Plaintiff was moved back to Elm and Weinberg's all mighty power taken from him. Scott is no longer under Weinberg in any way.

134. Elm is under another PAM.

135. Carla Jones was removed from Alder North based upon Plaintiffs recommendations.

136. Scott arranged for TVs, radios, cloths and art supplies, books and overall better conditions of confinement for the Alder North residents.

Case 3:06-cv-05172-FDB   Document 15   Filed 05/22/06   Page 14 of 19
Case 3:06-cv-05172-FDB-JKA   Document 1-2   Filed 03/29/2006   Page 14 of 19
Case 3:05-mc-05029-RSL   Document 23   Filed 01/18/2006   Page 14 of 19

137. In their depositions Dr. Szeibert and Carla Jones, as well as McLaughlin's private secretary V. Thorson, acknowledged the facts set forth in this complaint.

138. After plaintiff's return to Elm he began publishing the Liberty Puzzle again, and was given 100 sheets of typing paper and 25 envelopes a week.

139. During plaintiffs stay in isolation over twenty cases he had helped SCC resident file, were dismissed, most without prejudice

140. During his stay in Alter Plaintiff wrote to the SCC AAG s, and talked on the phone to the SCC AAGs named in the caption constantly.

141. During his stay in Alter the SCC AAGs condoned and encouraged, through failure to act, the behavior of the defendants named herein.

142. During his stay in Alter Plaintiff complained to the AG Rob Keenan and other AAGs he's know for twenty years

143. During his stay in Alter Plaintiff wrote to the Denny and McLaughlin and Richards constantly.

144. During his stay in Alter The SCC administrative staff named condoned and encouraged, through failure to act, the behavior of the defendants named herein.

145. During his stay in Alter Plaintiff lost his 10 appeals in the 9th Circuit since he was unable to effectively present is appeals.

146. During his stay in Alter Plaintiff filed a PRP but the state appeals court never received it.

147. Plaintiff was in superior court in pre commitment trial stage but he was unable to effectively assist his lawyer, so that case went into stay, until he was moved back to Elm. At which time he was granted Pro Se status October 21st 2005.

148. After Plaintiff was granted pro status he began experiencing new restrictions on paper: reduced to 100 sheets a month. And on envelopes to 25 (all sizes) a month.

COMPLAINT - 14 -

Richard Roy Scott Pro se
PO Box 88600
Steilacoom WA. 98388
(253) 584-9604

Case 3:06-cv-05172-FDB   Document 15   Filed 05/22/06   Page 15 of 19
Case 3:06-cv-05172-FDB-JKA   Document 1-2   Filed 03/29/2006   Page 15 of 19
Case 3:05-mc-05029-RSL   Document 23   Filed 01/18/2006   Page 15 of 19

149. After plaintiff was granted pro se status none of is pro se mail to no courts or lawyers or government official went out. He appealed to the SCC AAGs and Denny and Dr. Richards and McLaughlin, and to the mail supervisor Jones and her boss Kevin Trotter.

150. In November SCC AAG Erwin filed a false and misleading declaration to plaintiffs superior court (before his commitment judge) with regards to plaintiffs access to supplies etc at the SCC elm unit.

151. In November 2005 Dr. Richards issue a policy change noting that plaintiff's pro se mail might and could be to persons, companies, expert witnesses, my P.I. or doctors. In other words was not restricted to the regular legal mail description of courts and lawyers and government officials.

152. In November and December 2005 Jones and Trotter denied any knowledge of the Richards' memo and continued to return Plaintiff's pro se mail.

153. When Plaintiff responded to SCC AAG Erwin, he also complained to SCC administrative staff and the AG and others of Erwin low morals, tendencies to lying and increasing the costs of litigations of DSHS and SCC. Erwin was removed.

154. After plaintiff was granted pro se status his former lawyer, by order if the court sent him five larges boxes containing all his case legal files, including videos, cassette and discs all marked with the his cause number and some marked "King County Prosecutor discovery". Jones would not allow plaintiff these discs and videos and flops and cassettes. Plaintiff demanded to these items, which included a letter from his former attorney referencing the court order. Jones called Denny and then Lang and finally McLaughlin, who refused to come to the mail room. Finally the items were placed in a sealed envelop and taken by hand to the SCC investigators office (he was Already off island) for his inspection.

155. The next day the Former Private Investigator also sent Scott documents and videos (8mm). The video and cassette again were taken and sent to the SCC investigator Darrel Weeks.

COMPLAINT — 15 —

Richard Roy Scott Pro se
PO Box 88600
Steilacoom WA. 98388
(253) 584-9604

Case 3:06-cv-05172-FDB   Document 15   Filed 05/22/06   Page 16 of 19
Case 3:06-cv-05172-FDB-JKA   Document 1-2   Filed 03/29/2006   Page 16 of 19
Case 3:05-mc-05029-RSL   Document 23   Filed 01/18/2006   Page 16 of 19

156. It was three days before Scott was allowed the items set forth in #148 and #149

157. In November 2005 Becky Denny recovered information that the commitment Prosecutor wanted to fax Scott documents, some times requiring his signature and return by fax. And emails with attachments.

158. The SCC AAGs and Plaintiffs former attorney had and were faxing him documents, some requiring he sign them, and had been over the two and ½ years he had been at SCC.

159. In an email to McLaughlin Denny complained about this arrangement or request for an arrangement and McLaughlin backed her up by email stating "you are not Scott' Clerical secretary!"

160. Dr. Richards over ruled Denny and McLaughlin and fax service was established, as it has been prior to November 2005

161. Denny had a long standing feud with Plaintiff, and had been named in a prior lawsuit over events in 2003 and 2004 up to April 2005.

162. In a prior instance she has written plaintiff up for sexual harassment but the write up was thrown out as baseless

163. In a prior instance Denny had instructed the mailroom that pro se mail was restricted to the same receiptants as regular legal mail. Thi9s was contrary to SCC policy at the time, so McLaughlin cause that policy to be rewritten, but is again back to the way it was, as set forth in #151

164. According to Richard and Weinberg and Weeks: McLaughlin was the reason plaintiff computer was not returned for three months after it was taken June 2005.

165. McLaughlin condoned and encourage the alleged violations against unlawful search and seizure and obstruction of justice allegations, as well as retaliation allegations, set forth herein

COMPLAINT — 16 —

Richard Roy Scott Pro se
PO Box 88600
Steilacoom WA. 98388
(253) 584-9604

Case 3:06-cv-05172-FDB  Document 15  Filed 05/22/06  Page 17 of 19
Case 3:06-cv-05172-FDB-JKA  Document 1-2  Filed 03/29/2006  Page 17 of 19
Case 3:05-mc-05029-RSL  Document 23  Filed 01/18/2006  Page 17 of 19

166. On January 14th Scott was informed he would be restrict in his access to the courts, his witness, his standby council, expert witness, and parties he wished to subpoenas to 25 envelopes a month and 100 sheets of typing paper.

167. January 2005: And the mailroom likewise informed him only mail to the courts and government agencies and lawyers would be mailed for free. They are presently sitting on over two hundreds pieces of mail they have never mailed out. All marked legal mail.

168. Of the 47 subpoenas and twenty two motions plaintiff had tried to filed only 7 have been heard and no subpoenas issued. The court has noted they did not receive pieces or parts or in some case received things too late, sometimes five days past the date mailed (not counting weekends)

169. The King County prosecutor has complained he has not received his copies at all of motions etc.

170. SCC resident have had to refile numerous complaints because the Tacoma District court has claimed they never received the US marshal service forms or copies of complains, or response to show cause orders or R&Rs.

171. In declaration in another Scott case in 2003 Jones admitted to many complains about undelivered or late arriving outgoing and incoming mail.

172. In numerous *2005* emails FTs and PAM and RAs have all complained about Jones attempts to act as a censor. And over mail delays.

173. Trotter is aware of all the mail room complaints and has failed to act therein condoning those constitutional violations with regards to first amendment rights and court access rights.

174. Plaintiff is now restricted to 90 free copies a month and no one may make copies for him, even if they have funds.

175. Plaintiff recently lost three motions because he could not make copies of exhibits. All three motions were never heard.

Case 3:06-cv-05172-FDB   Document 15   Filed 05/22/06   Page 18 of 19
Case 3:06-cv-05172-FDB-JKA   Document 1-2   Filed 03/29/2006   Page 18 of 19
Case 3:05-mc-05029-RSL   Document 23   Filed 01/18/2006   Page 18 of 19

176. By administrative directive no one can get a copy made of any piece of paper that has the word *Liberty Puzzle* on it, even if they have funds

177. All staff at all levels have either condoned retaliation or themselves retaliated against plaintiff for his assisting others with legal filings, or his own filings, or his grievances either through the SCC grievance system, or by letter or through his interviews on TV or his publication the Liberty Puzzle.

178. The Liberty Puzzle is circulated through out the United States and Canada.

179. Every efforts has been made to prevent to circulation of the Liberty Puzzle, by the parties named herein

180. Every effort has been made and is being made to prevent residents from filing lawsuits and maintaining those lawsuits, by the parties named herein

181. Every effort has been made and is being made to prevent residents from effectively defending themselves in commitment courts, either in Pro s e staus or if they have lawyers, by the parties named herein

## II. Legal Standing

Plaintiff relies on the First, Fourteenth and Fourth. And Sixth Amendment. State Tort Laws, and negligence tort claims (common law). The Washington State Constitution articles 1, 4,14,and 6. And that this cases involves violations of the Substantive Due Process Clauses. And first amendment free speech violations. As well as constitutional protections against retaliation. And courts access violation. U.S.C. § 1983 and 1997 et seq.

The harm is ongoing and places the plaintiff in immediate danger of future harm.

## III. RELIEF SOUGHT

Case 3:06-cv-05172-FDB    Document 15    Filed 05/22/06    Page 19 of 19
Case 3:06-cv-05172-FDB-JKA    Document 1-2    Filed 03/29/2006    Page 19 of 19
Case 3:05-mc-05029-RSL    Document 23    Filed 01/18/2006    Page 19 of 19

1
2     In the amount of $1,500 a day from June 1st 2005 to date until which time the court
3 access, freedom of speech and retaliation violations stop.
4
5 General damages for infliction of emotional stress thru, retaliation, gross negligent supervision,
6 failures to act and gross negligence (common law). State Tort claims. $500,000
7
8 Punitive damages of $100,000 because the defendants named and to be further named were well
9 aware of their actions and continued on their course unwavering for all 2 year and half, and even
10 after the filing of this complaint., depositions, interrogatories and admissions.$20,000
11
12
13 Dr. Richards could have acted to stop this shameful overtly unlawful affair at any moment but
14 didn't, so he acted with gross indifference to Scott's constitutional civil rights, both State and
15 United States. In the amount personally of $500,000
16 Obstruction of Justice occurred at many levels and perjury in open court by AAG Erwin.
17 $100,000
18
19 *I swear the above is true to the*
20 *best of my recall*
21
22
23 Respectfully submitted 15th day of January , 2006
24
25 _____
    Richard Roy Scott, Pro Se
26     Box 88600

COMPLAINT      - 19 -      Richard Roy Scott Pro se
    PO Box 88600
    Steilacoom WA. 98388
    (253) 584-9604