UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RICHARD ROY SCOTT,

  Plaintiff,

  v.

WALTER WEINBERG *et al.*,

  Defendants.

Case No. C06-5172FDB

REPORT AND RECOMMENDATION TO DENY INJUNCTIVE RELIEF, DISMISS THIS ACTION AS MALICIOUS, DECLARE PLAINTIFF A VEXATIOUS LITIGANT, AND LIMIT FUTURE FILINGS IFP

**NOTED FOR November 3rd, 2006**

This 42 U.S.C. § 1983 Civil Rights action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR 3, and MJR 4. This Report and Recommendation is prepared for the Chief Judge of this District, the Honorable Robert S. Lasnik, because the undersigned is recommending a limitation on future *in forma pauperis* filings.

Overview

Mr. Scott, a resident of the Special Commitment Center for sexually violent predators, litigates under close judicial scrutiny as a result of his past abuses of the legal system. These abuses included

REPORT AND RECOMMENDATION - 1

sending demeaning and improper discovery requests to a defendant, filing motions that violated Rule 11 because they were repetitive and improperly motivated, improper use of subpoenas, and use of litigation for the purpose of harassment.  After multiple warnings to Mr. Scott went unheeded, the court attempted to place limits on Mr. Scott with a case management order. That order was entered January 8th, 2004.  See, Scott v Denny, 04-CV-5574RBL(Dkt. # 30).  The court ordered Magistrate Judges to enter a copy of that order in each subsequent case.  The order was entered in this case as Dkt. # 14.

When the case management order did not stop Mr. Scott's abusive filings, the court prepared a Report and Recommendation outlining Mr. Scott's litigation abuses and asking the District Court to impose sanctions. That Report and Recommendation was entered March 1st, 2005.  See, Scott v Denny, 04-CV-5574RBL, Dkt. # 68.  The Report and Recommendation was adopted by the three District Court Judges sitting in Tacoma on April 5th, 2005. See, Scott v Denny, 04-CV-5574RBL( Dkt. # 76).  The order specifically prohibits Mr. Scott from filing repetitive motions.  See, Scott v Denny, 04-CV-5574RBL(Dkt. # 76, page 4 ¶ 6).

Procedural history and facts leading to this Report and Recommendation

On September 14th, 2006, the court found it necessary to stay this action.  (Dkt. # 62).  In July of 2006, plaintiff filed six repetitive motions for injunctive relief.  (Dkt. # 21, 24, 25, 26, 27, and 28).  In August of 2006 the court called for a response from the defendants (Dkt. # 38).  Plaintiff had filed a total of eleven more motions by the time the court stayed the action, bringing his total number of pending motions to seventeen. Plaintiff's multiple filings made the case difficult to manage and were filed at a time when defense counsel was under a court ordered deadline to file a response regarding the first six motions for injunctive relief.

Defendant has filed the court ordered response regarding plaintiff's multiple requests for injunctive relief.  The response includes declarations and exhibits (Dkt. # 64, 65, 66, and 67).  Plaintiff has filed his reply, (Dkt. # 68).  This issue is ripe for review.

In his first motion (Dkt. # 21),  filed July 10th, 2006,  plaintiff asks the court to order the defendants to return his discovery to him.  While plaintiff states the records are on his computer and "disks and floppys [sic]", he does not tell the court why his computer and disks were taken (Dkt. # 21). Nor does

REPORT AND RECOMMENDATION - 2

plaintiff inform the court he had received over 18, 000 hard copies of the material on his computer and disks from the King County's Prosecutors Office. Further, Mr. Scott does not tell the court that on June 21st, 2006, the computer and disks had been subpoenaed by the King County Prosecutors Office for his civil commitment trial. Thus, his computer and disks had been subpoenaed19 days before he filed his first motion for injunctive in this court (Dkt. # 64-1, page 3).

The record is not clear as to when Mr. Scott received the 18, 000 hard copies of documents on his computer. On August 31st, 2006, the King County Superior Court entered findings that mention the discovery being given to Mr. Scott. In Re The Detention of Richard Roy Scott, 03-2-25609-9 SEA (Dkt. # 64-2, page 14). This Court did not stay this action until September 14th, 2006 (Dkt. # 62 order staying action entered September 14th, 2006). Thus, Mr. Scott had at a minimum two weeks to inform the court he had received hard copies of all the discovery he was asking this court to order the defendant supply. Further, he had more than two weeks to inform the court that his computer was in the possession of the King County Prosecutors Office as evidence in his civil commitment case.

Plaintiff also complained of restrictions on the amount of free paper, envelopes, pens, and writing tablets given to him. (Dkt. # 21). Plaintiff did not explain that his access to these items has been restricted because of his abusive letters to staff.

On, July 11th, 2006, one day after filing his first motion, plaintiff filed these additional motions:

1). "Emergency TRO" (Dkt. # 24). Plaintiff states "See attached Exhibit 1 The ultimate show stopper, or in this case, case stopper." He attaches a form indicating that he was denied writing materials or implements **not used for legal purposes**. The document outlines the required procedure for obtaining free writing paper for his legal work. (Dkt. # 24, Exhibit 1). Mr. Scott does not explain why this restriction on non legal writing materials has any effect on his litigation of this case.

2). "Motion for TRO". (Dkt. # 25). In this pleading Mr. Scott addresses the fact that plaintiff is not receiving free paper for all his writing needs and is only being provided free paper for legal work. Mr. Scott also complains of other restrictions being placed on him. (Dkt. # 25).

3). "Mt for TRO". (Dkt. # 26). The court interprets this as a motion for temporary restraining order. Plaintiff complains of being placed on room restrictions and alleges he is only allowed out one hour. He also states he has no access to the mail room or the phones "except when they say here." (Dkt. # 26). In the relief section of this document plaintiff states "surly the court can better design a set of restrictions on how far the defendants and their fellow employees can go to stop my court access and retaliate." (Dkt. # 26).

REPORT AND RECOMMENDATION - 3

On July 13th, 2006, plaintiff filed a "Motion on Court Access" in which he states he can not proceed without copies. He asks the court to order that he receive free copies. Plaintiff does not indicate what he is trying to copy or why the copies are needed for this or any other action (Dkt. # 27). He attached documentation showing he had been denied copies over the normal limit of 90 free copies per month unless the copies were for his civil commitment case. (Dkt. # 27). Plaintiff does not show he was prevented from filing any action as a result of these restrictions.

On the same day, July 13th, 2006, Mr. Scott also filed a "Motion for a protective order"(Dkt. # 28). In this pleading Mr. Scott alleges defendant Weinberg is retaliating against him and submits the same restrictions form he submitted on July 11th, 2006 (Dkt. # 24). Mr Scott also complains again about the taking of his computer, disks and other associated materials (Dkt. # 28).

The court determined that Mr. Scott had made an initial showing of possible retaliation, and called for a response to his repetitive motions. (The earlier case management order and sanctions order regarding Mr. Scott relieved defendants of the normal obligation to respond to a motion until the court orders a response). The court had concerns that Mr. Scott's pleadings were repetitive to the point of possibly warranting sanctions and entered an Order to Show Cause as part of the order calling for a response (Dkt. # 38).

Mr. Scott responded to the Order to Show Cause (Dkt # 44). His response contained no substance and was argumentative. Although warranted, the court declined to impose sanctions (Dkt # 63). The court notes that among the motions made between July 13th, 2006 and September 14th, 2006, four are repetitive of his earlier six injunctive relief motions. See, (Dkt. # 47, 48, 58, 61).

Between August 3rd, 2006, when the court ordered defendants to respond to Mr. Scott's numerous motions, and September 14th, 2006, when the court stayed this action, Mr. Scott had filed eleven additional motions:

1. Two motions for reconsideration or appeals from prior rulings. (Dkt. # 39 and 40).

2. A request the court take notice plaintiff had appealed entry of the case management order. (Dkt. # 42). Plaintiff claimed defendants had ten days to respond to his "appeal".

3. A motion to add a party (Dkt. # 43).

REPORT AND RECOMMENDATION - 4

4. Another motion for injunctive relief (Dkt. # 47). In this motion Mr. Scott complains of some of the same or related restrictions that form the basis of his prior motions and this time couches his complaints as "forced treatment."

5. A motion for discovery (Dkt. # 48). Plaintiff seeks sanctions for the taking of his computer and related documents and this time couches his motion as a discovery violation.

6. A motion for "Summary Judgment by Default" (Dkt. # 58). Mr. Scott asked for summary judgment for alleged discovery violations.

7. A motion for reconsideration regarding denial of a previous motion to consolidate cases (Dkt. # 55).

8. A motion for leave to conduct discovery (Dkt. # 56).

9. A motion asking the court to find perjury (Dkt. # 57).

10. The final motion was a request the court order the SCC make free copies for cases other than his civil commitment case (Dkt. # 61).

The fact that these additional eleven motions were filed while defendants were preparing a court ordered response is not lost on this court. Many of the motions are repetitive to the first six filings for injunctive relief. To prevent plaintiff from further abusing the legal system, and disrupting the orderly process of litigation, the court stayed the action on September 14th, 2006 (Dkt. # 62).

Defendants' responsive pleadings show that plaintiff's computer was taken for a search. Pictures of young boys without shirts and one picture of a women without a top on were discovered (Dkt. # 67, Declaration of Becky Denny, Page 2 and, Attachment B). Also found on Mr. Scott's computer was software that allowed him to erase data on his computer (Dkt. # 67, Declaration of Becky Denny, Page 2). Residents in the Special Commitment Center are not allowed pictures of this nature or software that allows them to delete data from their computers.

The responsive pleadings filed by defendants show plaintiff's access to paper was limited in response to his threatening and harassing letters to staff. Plaintiff threatened staff with legal actions, accused staff of sexual impropriety, threatened to print derogatory articles in a publication he produced, threatened to place liens against their personal property, and threatened to have several persons fired or have actions taken against them by licensing boards. In addition, Mr. Scott threatened to have family members' jobs taken from them. In at least one letter Mr. Scott alleges staff made statements about one another, thus attempting to cause strife between staff members at the Special Commitment Center. See,

REPORT AND RECOMMENDATION - 5

(Dkt. # 64-4 to 64-9).  Mr. Scott received a number of category 1 "BMRs", Behavioral Management Reports, as a result of his harassment of staff.  Mr. Scott's custody level was demoted to the lowest level.  Denial of access to paper for non legal use, and denial of use of the intra-office mail system were viewed by SCC treatment personnel as necessary steps to prevent Mr. Scott from engaging in his inappropriate behavior.  Below is an example of Mr. Scott's abusive letters to staff, in a letter to Dr Sziebert Mr. Scott states:

>  Sziebert,                                                      4-2-06
>
>  A Shame on you.  I know what you've been up to.  Flowers told me in full.  To misuse your position of authority for personal retaliatory reasons is typical.  You abused you[sic] authority over your last patient.
>
>  A-moral?  I shall see that you not practice, excuse me, abuse any more patients.  I've sent your depositions to the board and information about your latest abuse or attempted abuse.
>
>                             God forgive you,
>
>                             Scotty
>
>  cc: Richards
>      Medical Board
>      Pad Thorson

(Dkt. # 64-5, page 2).  Mr. Scott provides absolutely no detail as to any alleged abuses in his letter.  Further, the document was sent to Dr. Sziebert.  The court finds the letter harassing and improper in a clinical treatment setting.

Even though his access to paper for non legal reasons had been limited, personnel at the Special Commitment Center provided plaintiff with a substantial amount of paper and envelopes for legal work.  On July 28th, 2006 alone Mr. Scott received 1 ream of paper, 10 large envelopes and 12 small envelopes.  A memorandum to Mr. Scott from defendant Denny outlines some of the legal material supplied to Mr. Scott (Dkt. # 64-2 page 16).  The document outlines Mr. Scott receiving 2 reams of paper, 122 small envelopes, 90 large envelopes and multiple typewriter ribbons and correction tape (Dkt. # 64-2, page 16).

With regard to legal calls, Mr. Scott was "limited" to three legal calls **PER HOUR**.  Mr. Scott found this limitation unacceptable (Dkt. # 64-8, page 18).

With regard to copies, Mr. Scott received over 18, 000 hard copies of the documents stored on his

REPORT AND RECOMMENDATION - 6

computer and disks from the King County Prosecutor. (Dkt. # 68-1, page 13). In addition he has been given over 5,500 free copies for use in his civil commitment proceedings. (Dkt. # 64-1, page 9). Additionally, Mr. Scott receives 90 free copies per month for other litigation (Dkt. # 64-1, page 9).

The defendants' response also shows that on August 31st, 2006 the Washington State Superior Court for King County made certain findings regarding the taking of Mr. Scott's computer. In Re The Detention of Richard Roy Scott, 03-2-25609-9 SEA (Dkt. # 64-2, page 14). That tribunal found Mr. Scott was provided a hard copy of the discovery on his computer. While the King County Prosecutors Office was not involved in the decision to take Mr. Scott's computer, the King County Prosecutor's office has subpoenaed the computer and all attendant equipment that store information such as disks on June 21st, 2006. (Dkt. # 64-1, page 3) The Superior Court found that "it appears that the Special Commitment Center had a good faith basis to seize the computer." (Dkt. # 64-2 page 14 – state court findings).

Mr. Scott claims the actions taken against him are retaliatory. The record placed before the court shows Mr. Scott is belligerently confrontational with staff members, was storing unauthorized items on his computer, is making unreasonable demands for legal access, and is making repetitive motions that violate Fed Rule Civil Procedure 11 and Local General Rule 3 (d) regarding expedition of court business. The court will first consider the current motions for injunctive relief and then address Mr. Scott's litigation practices.

### Injunctive relief

The basic function of injunctive relief is to preserve the status quo ante litem pending a determination of the action on the merits. Los Angeles Memorial Coliseum Com'n v. National Football League, 634 F.2d 1197, 1200 (9th Cir. 1980). A party seeking injunctive relief must fulfill one of two standards, the "traditional" or the "alternative." Cassim v. Bowen, 824 F.2d 791, 795 (9th Cir. 1987).

> Under the traditional standard, a court may issue preliminary relief if it finds that (1) the moving party will suffer irreparable injury if the relief is denied; (2) the moving party will probably prevail on the merits; (3) the balance of potential harm favors the moving party; and (4) the public interest favors granting relief. . . . Under the alternative standard, the moving party may meet its burden by demonstrating either (1) a combination of probable success and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor.

Id. (citations omitted).

REPORT AND RECOMMENDATION - 7

Mr. Scott does not fulfill either test for injunctive relief.  On initial review, Mr. Scott's motions appeared to disclose actions by defendants which could very easily be viewed as retaliation for Mr. Scott filing legal actions.  However, Mr. Scott created the need for the state action by his improper behavior which he failed to disclose to this court.  Mr. Scott did not disclose what was found on his computer, or the fact that his computer has been subpoenaed by the King County Prosecutor in connection with his civil commitment case and thus was no longer in the possession of SCC personnel.

Mr. Scott has failed to show the restrictions placed on the amount of free legal material provided to him are anything but reasonable.  He has legal paper, but not free paper for other uses. The amount of paper and supplies given to Mr. Scott show a good faith attempt on the part of the personnel at the Special Commitment Center to allow Mr. Scott access to court while at the same time trying to curb his abusive and disruptive behavior.  Mr. Scott fails to show he cannot file complaints with 90 free copies per month.

Mr. Scott fails to show any irreparable injury or that he will prevail on the merits.  Further, given Mr. Scotts abusive practice toward staff, as outlined in the defendants response, he fails to show the balance of potential harm favors him.  There is no showing by plaintiff that defendants' response to his retaliation claims is pretextual.   Considering the deference given to the trained professionals who run a treatment facility such as the Special Commitment Center, Mr. Scott fails to show the public interest favors judicial intervention.   The motions for injunctive relief should be **DENIED**.

Dismissal of this action

Pursuant to 28 U. S. C. 1915 (e)(2)(B)(i), formerly 28 U. S.C. 1915 (d), the court shall dismiss a case notwithstanding payment of the filing fee if the court determines the case is malicious. The standard for dismissal as "malicious" has not been well defined by case law but some guidance exists.  In 1995 the District Court in Delaware considered the malicious standard and stated:

> A separate standard for maliciousness is not as well established. *Deutsch* [67 F.3d 1085-87] merely states that a district court "must engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure, or harass the defendants." *Id*. Other Circuits, however, have offered more objective instances of malicious claims. For example, a district court may dismiss a complaint as malicious if it threatens violence or contains disrespectful references to the court. *Crisafi v. Holland*, 655 F.2d 1305 (D.C.Cir.1981); *see also Phillips v. Carey*, 638 F.2d 207, 208 (10th Cir.1981) (stating that courts may dismiss pleadings with abusive or offensive language pursuant to the court's inherent powers under FRCP 12(f)). In addition,

REPORT AND RECOMMENDATION - 8

a district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims. *Id.; Van Meter v. Morgan*, 518 F.2d 366 (8th Cir.), *cert. denied*, 423 U.S. 896, 96 S.Ct. 198, 46 L.Ed.2d 129 (1975); *Duhart v. Carlson*, 469 F.2d 471 (10th Cir.1972), *cert. denied*, 410 U.S. 958, 93 S.Ct. 1431, 35 L.Ed.2d 692 (1973).

Abdul-Akbar v. Department of Corrections, 910 F. Supp. 986, 999 (D. Del. 1995). Other courts have found the term "malicious" means irresponsible or harassing litigation. Daves v. Scranton, 66 F.R.D.5 (E.D. Pa. 1975). The Pennsylvania District Court Stated:

> The legal standard of 'frivolous or malicious' is not capable of precise definition for it is a standard intended for administration within the broad discretion of the court and to be applied with reasonable restraint but as a practical response to irresponsible litigation which would otherwise be subsidized and encouraged by the generosity of the *in forma pauperis* statute.

Daves v. Scranton, 66 F.R.D. 5 (E.D. Pa. 1975). This court adopts the Pennsylvania Districts Courts' position. Mr. Scott has not been curtailed by prior warnings or sanctions as is evident by his motion practice in this action. The undersigned believes exercise of the court's discretion, applied with reasonable restraint, as a practical approach to irresponsible litigation, is in order.

Mr. Scott has a long history of filing actions that appear on their face to have arguable merit. He then proceeds to file malicious discovery and vexatious motions, using his litigation as a platform to harass persons and challenge every aspect of his civil confinement. This litigation history of abuses by Mr. Scott has resulted in a case management order and sanctions that were intended to curb Mr. Scott's abuses while still allowing him unfettered access to the court on any issue not previously dismissed. See Scott v. Denny, 04-CV-5574RBL Dkt. # 30 and 76.

The Report and Recommendation in Scott v. Denny, 04-CV-5574RBL, Dkt. # 68, outlines Mr. Scotts abusive motion practices in several cases. In the discussion concerning one of those cases, Scott v Lehman 04-CV-5521FDB, the court stated "[t]he case represents an example of abusive pleading practice where multiple motions are filed asking for the same relief and the plaintiff does not wait for a response from the court before filing the same motion again. Motion practice of this nature cannot be for a proper

REPORT AND RECOMMENDATION - 9

purpose and only delays and increases the cost of litigation." (Scott v Denny, 04-CV-5574RBL Dkt. # 68). In addition to being a violation of Fed. R. Civ. P 11, this court views repetitive motion practice of this nature as designed to harass and finds the practice is "malicious".

Here, over the course of four days in July plaintiff made no less than six motions for some type of injunctive relief (Dkt. # 21, 24, 25, 26, 27, and 28). Further, while those six motions were pending, Mr. Scott filed eleven additional motions, four of which sought injunctive relief on the same issues (Dkt. # 47, 48, 58, 61). The multiple motions evidence Mr. Scotts intention of using litigation to harass persons and challenge every action regarding his confinement in a continuum of piecemeal motion practice. This includes his filing motions challenging actions predicated upon Mr. Scott's own misconduct. The filings are violations of Fed. R. Civ. P. 11 are designed to harass and are "malicious'.

Whatever merit plaintiff's original action may have had, his litigation practice and refusal to comply with the sanctions orders imposed on him mandate dismissal of this action pursuant to Fed., R. Civ. P. 11 and 28 U.S.C. 1915 (e)(2)(B)(i).

### Vexatious litigant

This court has inherent power to regulate the extent to which abusive litigants can access the courts. DeLong v Hennessey, 912 F. 2d 1144, 1147 (9th Cir. 1990) Cert denied, 498 U.S. 1001 (1990). Generally the court should attempt to balance the litigants right of meaningful access against the courts need to be free of abusive tactics. James Cello-Whitney v. Robert Hoover, 769 F. Supp 1155, 1158 (W. D. Wash 1991); citing Franklin v. Murphy, 745 F.2d. 1221, 1228 (9th Cir. 1984).

The standard for orders of this nature was first set forth in DeLong. DeLong v Hennessey, 912 F. 2d 1144, 1147 (9th Cir. 1990) Cert denied, 498 U.S. 1001 (1990). An order of this nature must:

(1)     Give the litigant adequate notice to oppose the order before entry;

REPORT AND RECOMMENDATION - 10

(2)   Present an adequate record for review by listing the case filings which support the order;

(3)   Include substantive findings as to the frivolous or vexatious nature of the litigant's filings; and

(4)   Be narrowly tailored to remedy only the plaintiff's particular abuses.

James Cello-Whitney v. Robert Hoover, 769 F Supp. 1155, 1158 (W.D. Wash. 1991).

This is a Report and Recommendation, not an order. Accordingly, Mr. Scott is given notice of the proposed order and a chance to oppose entry of the order by way of objection. The record of abuses is contained not only in the filings of this case, but also in the filings of each of the cases mentioned in the Report and Recommendation in Scott v. Deny, 04-CV-5574RBL (Dkt. # 68). The Report and Recommendation in that case and the attached documents are more than fifty pages long and need not be set forth verbatim here. That Report and Recommendation outlines Mr. Scotts motion and litigation practices in a large number of cases. The file in that case shows the court has attempted to narrowly tailor remedies to curb or curtail Mr. Scott's abusive practices. Those attempts have failed.

The undersigned reports as follows:

(1) that Dkt. # 21, 24, 25, 26, 27, 28, 47, 48, 58, and 61 are improperly repetitive motions; and violate a prior court sanctions order, and needlessly increase the cost of litigation in violation of Fed. R. Civ P. 11 and Local General Rule 3 (d);

(2) that Mr. Scott's representations to the court and his omissions (failure to inform the court of the defendants reasons for taking his computer and reasons for placing him on paper restrictions) were deceptive;

(3) that Mr. Scott's failure to inform the court that he had sought injunctive relief in another forum, (King County Superior Court) and that he was denied relief on August 31st, 2006 is a violation of his duty to expedite this court's business under Local Rule General Rule 3 (d);

REPORT AND RECOMMENDATION - 11

(4) that Mr. Scott has a long history of abusive practices that have not been curbed by warnings or lesser sanctions designed to address these practices; and

(5) that Mr. Scott is abusing the privilege to file actions *in forma pauperis*.

Exercise of the court's discretion, applied with reasonable restraint as a practical approach to irresponsible litigation, now requires that Mr. Scott be prohibited from filing any further actions *in forma pauperis* unless he certifies under penalty of perjury that he is in imminent danger of death or serious bodily injury.

The court has tried lesser sanctions and has attempted to leave the privilege of filing *in forma pauperis* open for this litigant. Mr. Scott's abuse of the legal system has continued unabated.

The court anticipates Mr. Scott will begin to file his actions in state courts. Any action filed in state court and removed to federal court should be subject to this order. Unless the plaintiff certified under penalty of perjury that he was in imminent danger of death or serious bodily injury, plaintiff should not be permitted to proceed without payment of the filing fee.

Conclusion

Mr. Scott's motions for injunctive relief should be **DENIED** as he failed to show irreparable injury and was less then truthful with the tribunal. The defendants' response shows Mr. Scott has created the need for action by his improper behavior. He then uses litigation as a platform for challenging the actions his behavior necessitates.

Recommendation

1) This action should be **DISMISSED** under 28 U.S.C. 1915 (e)(2)(B)(i) as malicious.

2) Mr. Scott should be declared a vexatious litigant and prohibited from proceeding *in forma pauperis* in any future action unless the court determines that he is in imminent danger of death or serious bodily injury. This would include actions filed in state court and transferred to this court.

REPORT AND RECOMMENDATION - 12

A proposed order accompanies this Report and Recommendation. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **November 3rd, 2006**, as noted in the caption.

DATED this 13th day of October, 2006.

/S/*J. Kelley Arnold*

J. Kelley Arnold
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13